Siegel et al v. Warner Bros. Entertainment Inc. Doc. 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:<br><br>JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT INC., et al.,<br><br>Defendants. | Misc. Case No. 1:06MC0099<br><br>Case Nos. SA CV 04-8400 SJO (RZx)<br>SA CV 04-8776 SJO (RZx)<br><br>(Consolidated for Discovery Purposes)<br><br>Action Pending in the U.S. District Court for the Central District of California<br><br>JUDGE OLIVER |



## MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES AND MEMORANDUM IN SUPPORT THEREOF

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants"), by and through counsel, Jones Day, hereby move the Court pursuant to Fed. R. Civ. P. 45: (1) for an order compelling Cleveland, Ohio resident Don Bulson, Esq. ("Bulson") to produce documents responsive to a subpoena *duces tecum* issued by the U.S. District Court for the Northern District of Ohio in the above-captioned actions; (2) to compel such production without regard to the attorney-client privilege; (3) to appear for deposition in accordance with the Subpoena; and (4) to award to Movants their costs and attorneys' fees incurred in making this motion. Movants respectfully request an oral argument on this Motion to further clarify controlling law and facts and to demonstrate Movants' entitlement to the requested relief.

CLI-1460221v1

## PRELIMINARY STATEMENT

Movants are defendants in two complex actions (consolidated for discovery) pending in the U.S. District Court for the Central District of California, relating to, inter alia, copyrights in certain Superman literary works. Pursuant to Fed. R. Civ. P. 45, on August 11, 2006, Movants served a subpoena duces tecum (the "Subpoena") on Don Bulson ("Bulson") (attached as Exhibit 1 hereto is a copy of the Subpoena), a resident of Cleveland, who was counsel for Michael Seigel, the deceased son of Jerry Siegel and one of the co-creators of Superman. In response to the Subpoena, Bulson, through his counsel, served boilerplate objections, unaccompanied by a privilege log, and has ignored requests to produce documents or appear for deposition. Other than serving objections, Bulson has made no effort to comply with the Subpoena, forcing Movants to seek relief from the Court. Accordingly, Movants respectfully request that Mr. Bulson be ordered to produce all responsive documents. Because the failure to produce a privilege log results in a waiver of the attorney-client privilege and because documents which may have previously been privileged have been made public, Mr. Bulson should be ordered to include in his production any and all alleged attorney-client privileged documents. Movants further request an award of attorneys' fees for the cost of making this motion.

### A. The Underlying Actions

Plaintiffs in the two actions, Joanne Siegel and her daughter, Laura Siegel Larson ("Plaintiffs") are, respectively, the widow and daughter of Jerry Siegel ("Siegel") who, along with Joseph Shuster, created the first Superman comic story, published in 1938. Plaintiffs have instituted two actions arising out of their purported terminations of copyright grants pursuant to section 304(c) of the Copyright Act, 17 U.S.C. § 304(c), relating to literary works featuring the Superman character. The first case, Case No. CV 04-8400 PA (RZx) (C.D. Cal.) (the "Superman Action"), is based on termination notices mailed on April 3, 1997 purporting to terminate

Siegel's copyright grants to defendant and counterclaimant DC Comic's predecessor, Detective Comics, Inc., (the "Superman Termination Notices"), affecting Siegel's share as a co-author in seven grants of rights under copyright made by Siegel and Shuster in the Superman character and comic book stories dating back to 1937. (Attached as Exhibit 2 hereto is a copy of the First Amended Complaint in the Superman Action.) Siegel's share is proportionally owned by Plaintiffs (50% by Joanne Siegel, 25% by Laura Siegel Larson) and Michael Siegel (deceased), Jerry Siegel's son from his first marriage (25%). Although, Michael Siegel was not made a party to the Superman Action, his rights (now those of his estate) are in effect being represented in the litigation through Plaintiffs since 25% of any recovery obtained by them would have to be accounted for and paid to him.

The Superman Termination Notices, which identify more than 15,000 works purportedly affected, relate only to Siegel's – but not co-creator Shuster's – interest in the purportedly terminated grant. Thus, regardless of whether Plaintiffs' Superman Notices are valid – a proposition disputed by Movants – DC Comics remains the successor to and thus the owner of Shuster's undivided one-half interest in copyright in all Superman literary works. Beyond a declaration as to the effectiveness of the Superman Termination Notices, the principal relief Plaintiffs seek in the Superman Action is an accounting for Siegel's one-half share in profits from Superman exploitation following the purported effective date of the termination. (Id.)

On November 8, 2002, Plaintiffs served a second notice of termination (the "Superboy Termination Notice"), relating only to comics featuring Superboy and purporting to terminate grants made only by Siegel in the Superboy works. On October 22, 2004, Plaintiffs filed the second action (the "Superboy Action," collectively referred to hereafter, with the Superman Action, as the "Underlying Actions"), Case No. 04-8776 SJO (RZx), seeking a declaration that they have recaptured all rights in Superboy. (Attached as Exhibit 3 hereto is a copy of the First

Amended Complaint in the Superboy Action.) Plaintiffs allege further that "[d]efendants' ongoing exploitation of the 'Superboy' mythology, including but not limited to the Superboy Comic Books, and other publications, 'Superboy' merchandising, animated and live action television programming (e.g., the Smallville Series)" infringes Plaintiffs' copyright rights in certain materials relating to the Superboy character. (Id. ¶ 67.) As with the Superman Action, Michael Siegel was not made a party to the Superboy Action.

Defendant DC Comics has filed extensive affirmative defenses and counterclaims in both actions. (Attached as Exhibit 4 hereto is a copy of the First Amended Counterclaims in the Superman Action.) Those counterclaims, which are virtually identical in both cases, include: (1) a request for a declaration that Plaintiffs' Notices of Termination are invalid; (2) a request for a declaration that Plaintiffs' claim for co-ownership of Superman is barred by the statute of limitations; (3) in the alternative, breach of a settlement agreement; (4) in the alternative, a request for a declaration that Plaintiffs are entitled only to the financial compensation provided for in the settlement agreement; (5) in the alternative, a declaration of limitations on the scope of any recovery by Plaintiffs; (6) in the alternative, a declaration of the accounting principles to be applied in any revenue sharing with Plaintiffs. (Id.) Fact discovery in the Underlying Actions is set to close on November 17, 2006.

B.  Michael Siegel and His Counsel, Don Bulson

Michael Siegel, Jerry Siegel's son from his first marriage and the half-brother of plaintiff Laura Siegel Larson, owns a 25% share of the Siegel termination interest which Plaintiffs are seeking to enforce in the Actions. Michael Siegel passed away in January 2006.

Mr. Bulson has for many years been Michael Siegel's attorney in connection with his share of the Siegel termination interests, and has been involved in negotiations over the years

with Movants and their representatives concerning the attempted settlement of the claims in the actions, which negotiations are the subject of defendant DC Comics' counterclaims.

Moreover, during the course of discovery in the actions, Movants have learned that Plaintiffs' counsel in the Underlying Actions, on behalf of his clients, attempted to purchase from Michael Siegel his share of the Siegel termination interest.

Finally, prior to his death, Michael Siegel sent a series of emails to Mr. Bulson in which he set out the terms of his will, and, specifically, set forth that Plaintiffs were not to receive his share of the Siegel termination interest. (Exhibit 5.) Whether the email communications form the basis of a will under Ohio law is the subject of a pending litigation. (Exhibit 6.)

## C. The Subpoena and Mr. Bulson's Objections

Bulson was served with the Subpoena (Exhibit 1) on August 11, 2006. The Subpoena seeks production of the following documents:

1. All Documents Concerning Superman and/or Superboy.

2. All Documents Concerning any negotiations Concerning Superman and/or Superboy including but not limited to, negotiations by or with Defendants, Plaintiffs, Michael Siegel, Dennis Larson, Toberoff, and/or the Shuster Representatives.

3. All Documents Concerning any agreements with Plaintiffs, Michael Siegel, Dennis Larson, Toberoff, and/or the Shuster Representatives Concerning Superman and/or Superboy, including but not limited to, any agreements Concerning any ownership interest in and/or revenue from Superman and/or Superboy.

4. All Documents Concerning any valuation of any current or potential ownership interest in Superman and/or Superboy.

5. All Documents evidencing any correspondence with any third person Concerning Superman and/or Superboy, including but not limited to, Plaintiffs, Dennis Larson, Toberoff, and/or the Shuster Representatives.

6. All Documents Concerning Michael Siegel's estate, including but not limited, any wills, draft wills, and any communications expressing Michael Siegel's wishes with respect to any assets.

7. All Documents Concerning any litigation relating to Michael Siegel's estate.[1]

*Id.* The subpoena also required Mr. Bulson to appear for deposition on September 12, 2006, and was served with the required fee.

On August 23, 2006, Bulson, through his counsel Marc Toberoff (also counsel for Plaintiffs in the Action) served written objections to the Subpoena. (Exhibit 7.)[2] The objections are largely identical, and contain boilerplate objections based on vagueness, ambiguity, overbreadth, undue burden, and the attorney-client privilege. No additional documentation was received with the objections.

### D. Meet and Confer Efforts and LR 37.1 Certification

On August 30, 2006, counsel for Movants, James D. Weinberger of Fross Zelnick Lehrman & Zissu, P.C., wrote to counsel for Mr. Bulson, Marc Toberoff and Nicholas Williamson of the Law Offices of Marc Toberoff, to find out when documents and a privilege log would be provided, and to inquire about Mr. Bulson's availability for a deposition. (Exhibit 10.) No written response was received to this letter.

On September 7, 2006, counsel for Mr. Bulson contacted Movants' counsel by phone to advise that Mr. Bulson would not be appearing at the deposition scheduled for September 12, 2006. Because no documents had been produced, counsel for Movants inquired again as to the

---

[1] Movants have obtained publicly available documents from court files and are not seeking the same from Mr. Bulson here.

[2] A nearly identical subpoena was simultaneously served on Melvin H. Banchek, the administrator of Michael Siegel's estate. (Exhibit 8.) Mr. Toberoff also represents Mr. Banchek, and served nearly identical objections to the Banchek subpoena as he did on behalf of Mr. Bulson. (Exhibit 9.) However, in stark contrast to Mr. Bulson, Mr. Banchek subsequently produced a privilege log and made documents available for inspection and copying. It is clear from the materials provided by Mr. Banchek, however, that the documents Movants seek are in the possession of Mr. Bulson, meaning that Mr. Bulson has no basis to argue that his obligation to comply with the Subpoena is somehow made unnecessary by Mr. Banchek's compliance.

status of the document production and service of a privilege log. Counsel for Mr. Bulson said that he would follow up. No follow-up call was ever received.

On September 14, 2006, counsel for Movants wrote another letter to counsel for Mr. Bulson, advising that unless document production and a privilege log were produced within 5 days, Movants would seek relief from this Court. (Exhibit 11.) No response was ever received.

Accordingly, Movants represent and certify that they have made sincere, good faith efforts to resolve the instant dispute. These efforts have been ignored by Mr. Bulson and his counsel.

## ARGUMENT

I. **BULSON SHOULD BE REQUIRED TO PRODUCE ALL DOCUMENTS RESPONSIVE TO THE SUBPOENA**

   A. **The Documents Called For By The Subpoena Are Crucial To Movants' Defenses And Counterclaims And Thus Are Calculated To Lead To The Discovery Of Admissible Evidence.**

Rule 45(d) covers subpoenas and permits them to require the production of designated documents which are within the scope of the examination permitted by Rule 26(b). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Rule 26(b) authorizes parties to obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and all information "reasonably calculated to lead to discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Lewis*, 135 F.3d at 402 (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir.1970)).

There is no genuine dispute that the documents sought by the subpoena, outlined above, are crucial to Movants' defenses and counterclaims. First, documentary evidence produced by Plaintiffs that shows that they authorized their agent to attempt to purchase Michael Siegel's termination interests on their behalf. Any such documents in the possession of Siegel's attorney are relevant to the purported value of Plaintiffs' interest for which they are seeking an accounting in the actions. Second, because one of the primary issues in the Underlying Actions is an attempt to place a value upon Plaintiffs' purported re-captured share in the Superman copyrights, any agreements Michael Siegel may have made or negotiated regarding his purported copyright interest are directly relevant. Third, to the extent that documents exist concerning Michael Siegel's email will in which he apparently transferred his rights to a third party, no possible attorney-client privilege exists since the relevant communications have been disclosed to those third parties and filed in court papers. *See, e.g., American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991) (privilege protects against any dissemination of information obtained in the confidential relationship); *Mid-American Natl. Bank & Trust Co. v. Cincinnati Ins.*, 74 Ohio App.3d 481 (Ohio Ct. App. 6th Dist 1991) (previously confidential attorney-client communication released to opposing party not privileged). Thus, once confidentiality of a previously protected attorney-client communication is no longer in place, the communication is not privileged.

Moreover, Mr. Bulson's objections to the Subpoena do not hold water. The document requests are concise, straightforward and directed to discrete topics of documents in his possession, custody and control. Essentially, they seek any document Mr. Bulson has concerning the Seigel Termination Interest, whether it be correspondence, an agreement, a valuation, or the settlement negotiations concerning same. Furthermore, mere boilerplate is not sufficient to justify ignoring a legitimate discovery request. *See, e.g., General Cable Corp. v.*

*Highlander*, No. 1:05CV00083, 2006 WL 1526487 (S.D. Ohio May 31, 2006) (broad objections that documents were not relevant or likely to the discovery of admissible evidence, combined with statement that documents would be produced to the extent they existed and were not privileged rejected as "linguistic baloney").

Accordingly, Movants respectfully request that the Court order Mr. Bulson to produce documents responsive to the Subpoena.

### B. Bulson Has Waived His Right To Object on the Basis of Privilege by Failure to Produce a Privilege Log

The law in this district is clear that a privilege log is required to support a claim of attorney-client privilege in response to a written discovery request. *See, e.g., Bondex Int'l, Inc. v. Hartford Accident & Indem. Co,* Case No. 1:03CV1322, 2006 WL 355289, *2 (N.D. Ohio Feb. 15, 2006) ("Assertions of this [attorney-client] privilege should be made in the usual way and be accompanied by a privilege log."); *Comstock, Inc. v. Conros Corp.,* Case No. 1:96MC43, 1996 WL 194268, *5 (N.D. Ohio Mar. 27, 1996) (failure to produce privilege log suggests waiver of privilege); *Meridian Diagnostics, Inc. v. Yi,* No. C-1-00-540, 2001 WL 1842463, *9 (S.D. Ohio Mar. 9, 2001) (failure to produce a privilege log violates Rule 26). Here, Mr. Bulson objected to the subpoena through counsel but has otherwise ignored his obligations and repeated requests for a log. (*See* Exhibits 10, 11.) Thus, Movants respectfully request that the Court order Mr. Bulson to produce documents responsive to the subpoena without regard to whether they may be subject to the privilege.

## II. MOVANTS ARE ENTITLED TO REIMBURSEMENT OF THEIR ATTORNEYS' FEES FOR THE COST OF MAKING THE INSTANT MOTION

Courts have held that the award of attorneys' fees is appropriate for motions brought under Rule 45. *See, e.g., First Indem. Of Am. Ins. Co. v. Shinas,* 2005 U.S. Dist. LEXIS 35860 at *12-14 (S.D.N.Y. 2005) (awarding attorneys' fees on motion brought under Rule 45). Mr.

Bulson has had two and a half months to comply with the Subpoena, but has failed to do so. Movants' counsel has attempted to work cooperatively and patiently to obtain compliance, but to no avail. Movants should not be made to pay for having to make this motion caused solely by Mr. Bulson's non-compliance.

WHEREFORE, Movants request: (1) that Mr. Bulson be required to turn over, as soon as possible, all documents responsive to the Subpoena without regard to the attorney-client privilege; and (2) that Movants' attorneys' fees incurred in making the instant motion be reimbursed. Movants also request an oral argument on this Motion to further clarify controlling law and facts and to demonstrate Movants' entitlement to the requested relief.

Respectfully submitted,

By /s/ Meggan A. Rawlin
David A. Kutik (0006418)
Meggan A. Rawlin (0074215)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
dakutik@jonesday.com
mrawlin@jonesday.com

Counsel for Movants

Of counsel:

Roger L. Zissu
James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, PC
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901

## CERTIFICATE OF SERVICE

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics hereby certify that a copy of the forgoing Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees and Memorandum in Support Thereof was served on October 20, 2006 via U.S. Mail and facsimile on the following counsel:

> Marc Toberoff, Esq.
> Law Offices of Marc Toberoff, PLC
> 2049 Century Park East, Suite 2720
> Los Angeles, CA 90067
> Telephone: 310.246.3333
> Facsimile: 310.246.3101

*Meggan A. Rawlin*
Meggan A. Rawlin
Attorney for Movants