## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:**<br><br>**JOANNE SIEGEL and LAURA SIEGEL LARSON,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**WARNER BROS. ENTERTAINMENT INC., et al.,**<br><br>    **Defendants.** | **Misc. Case No. 00099- SO**<br><br>**Case Nos. CV 04-8400 SGL (RZx)**<br>     **CV 04-8776 SGL (RZx)**<br><br>**(Consolidated for Discovery Purposes)**<br><br>**Action Pending in the U.S. District Court for the Central District of California** |

### DON W. BULSON, ESQ.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES

Ohio resident Don W. Bulson, Esq. ("Bulson"), who is a non-party to this action pending in the Central District of California, has reviewed his legal files and served a detailed privilege log responsive to Defendants Warner Bros. Entertainment Inc. ("WB"), Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc. and DC Comics' ("DC") (collectively, "Defendants" or "Movants") Subpoena Duces Tecum served on him on August 11, 2006 (the "Subpoena"). Despite the overbroad and invasive nature of the Movants' Subpoena on a non-party attorney, Bulson and his counsel have made every effort to comply with the requests. Notwithstanding the clearly privileged nature of Bulson's files, Bulson's counsel offered to represent that all responsive documents had been listed in the privilege log and even to produce certain privileged documents. However, Defendants' counsel refused this offer and instead

insisted on pressing ahead with an unnecessary motion to compel ("Motion"). As demonstrated below, Bulson has responded to the Movants' Subpoena by detailing his privileged legal files in a privilege log. As such, the Movants' wasteful motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or the "Siegel Heirs") are the widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world renowned comic book hero, "Superman," and the sole author of "Superboy." Plaintiffs have initiated two civil actions in the United States District Court for the Central District of California regarding Plaintiffs' proper exercise of their right under section 304(c) of the 1976 United States Copyright Act, 17 U.S.C. § 304(c) ("Section 304(c)"), to recapture Siegel's original copyrights in "Superman" and "Superboy" by serving statutory notices on the Defendants herein on April 3, 1997 and March 8, 2002, respectively terminating Siegel's prior grant(s) of "Superman" and "Superboy" to Defendants' predecessor(s) (the "Siegel Terminations" or "Terminations"). *See* Movants' Motion to Compel Production of Documents ("Mot. Compel"), Exs. 2, 3.

Plaintiffs' Terminations complied with all the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, the regulations promulgated thereunder by the Register of Copyrights. Accordingly, on April 16, 1999, the noticed "Superman" termination date, all rights Siegel conveyed in "Superman" to Defendants' predecessors duly reverted to Plaintiffs. Mot. Compel Ex. 2. On November 17, 2004, the noticed "Superboy" Termination date, all rights that Siegel had conveyed in "Superboy" to Defendants' predecessors duly reverted to Plaintiffs. Mot. Compel Ex. 3.

Shortly after Plaintiffs served their "Superman" Termination notices the general counsel of Defendant Warner Bros. Entertainment Inc. and the President of DC Comics, a wholly owned

WB subsidiary, both acknowledged the validity of the "Superman" Termination and the parties began negotiations for Defendants' purchase and settlement of the Plaintiffs' recaptured copyright interests. Mot. Compel Ex. 2. However, when no agreement was made or executed by the parties, Defendants, in a reversal of their prior acknowledgement of the "Superman" Terminations two years earlier, contested the Terminations in 1999, one day before the effective Termination date, claiming the Terminations were somehow invalid. *Id.*

Defendants thereafter also similarly claimed that the "Superboy" Termination was invalid. Plaintiffs consequently commenced declaratory relief actions in the Central District Court of the State of California regarding the validity and effect of the "Superman" and "Superboy" Terminations on October 8, 2004 (Case No. CV 04-8400 RSWL (RZx)) and October 22, 2004 (CV 04-8776 RSWL (RZx)), respectively (the "Siegel Litigations"). *See* Mot. Compel, Exs. 2, 3.

Plaintiffs moved for partial summary adjudication on February 15, 2006 that their statutory "Superboy" Termination is valid and that Plaintiffs thereby recaptured Siegel's "Superboy" copyright. Defendants cross-moved for summary judgment claiming the "Superboy" Termination was invalid based in large part on the same purported claims and defenses asserted with respect to "Superman." On March 23, 2006, the Court *granted* Plaintiffs' motion in its entirety and *denied* Defendants' motion in its entirety. *See* Declaration Of Nicholas Williamson In Opposition to Defendants' Motion to Compel Production of Documents ("Williamson Decl."), Ex. C. Defendants subsequently moved to have this Order certified for appeal, which motion was also *denied* by the Court.

In purported connection with the Siegel Litigations, Defendants served Ohio resident Bulson with the Subpoena at issue herein on August 11, 2006. Mot. Compel Ex. 1. On August

3

23, 2006, Bulson filed timely objections to the Subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. Mot. Compel Ex. 7. Bulson served as counsel to Siegel's son from his first marriage, Michael Siegel. Williamson Decl., ¶ 3. Michael Siegel is not a party to the Siegel Litigations. Mot. Compel. Exs. 2, 3.

Plaintiffs served Defendant DC their first set of requests for production of documents on May 13, 2005. Declaration of Marc Toberoff, Esq. in Opposition to Defendants' Motion to Compel Production of Documents ("Toberoff Decl."), ¶ 3. Plaintiffs also served Defendant WB a separate set of requests on May 13, 2005. *Id.*, ¶ 4. Both Defendants filed responses to their respective requests on June 13, 2005. *Id.*, ¶ 5. DC thereafter produced a small portion of their non-privileged documents available for copying on August 9, 2005. *Id.*, ¶ 5. <u>However, Defendant DC did not serve a privilege log until April 7, 2006 *eight months* after its production</u>. *Id.*, ¶ 6. <u>Incredibly, despite Plaintiffs' repeated demands, Defendant WB failed to produce *any* documents for copying until June 2, 2006, over *a year* after Plaintiffs' requests were served</u>. *Id.*, ¶ 7. <u>WB subsequently served their privilege log on June 27, 2006, *thirteen months* after Plaintiffs' Requests</u>. *Id.*, ¶ 8. Thus, Movants are quick to point the finger at *non-parties* such as Bulson when their own conduct in discovery has been lax and often unresponsive.

**A.     The Parties' "Meet and Confer" Efforts**

On August 30, 2006, Defendants' counsel James D. Weinberger ("Weinberger") sent Bulson's counsel a letter regarding the Subpoena. Defendants' assertion that no "written" response was received ignores the frequent phone communication between counsel. Mot. Compel 6. In fact, counsel subsequently conducted a conference by telephone on September 7, 2006 in which Bulson's counsel explained that Bulson's voluminous file was being sent from Cleveland to Los Angeles and that a privilege log would be submitted as soon the documents

could be analyzed. Williamson Decl. ¶ 5. In response, Weinberger agreed to move Bulson's deposition from its original September 12, 2006 date. *Id.* Bulson's counsel served Defendants' counsel with his privilege log on October 23, 2006. *Id.*, Ex. A. Bulson remains ready and willing to be deposed by the Movants. Despite his compliance and efforts by his counsel to amicably resolve this matter, the Movants rigidly insist on steamrolling ahead with their Motion. Toberoff Decl. ¶ 9, Ex. E.

## ARGUMENT

### I. BULSON HAS PROVIDED A DETAILED PRIVILEGE LOG

On October 23, 2006, Bulson furnished Defendants with a 31-page privilege log, containing 422 entries, properly setting forth with respect to each communication: the date, sender, recipient, the nature of the privilege claimed, the document type and the present location of the document. Williamson Decl., Exs. A, B (5:16-27). This log was constructed using a format previously approved in this action by the District Court for Central District of California. *Id.*, Ex. B (5:16-27). Despite this clear compliance with the Federal Rules of Procedure, Defendants argue that Bulson failed to submit a privilege log in a timely manner, and thus waived the underlying privilege. This is simply incorrect. In *Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct.,* 408 F.3d 1142 (9th Cir. 2005), the court explicitly rejected the contention that the failure to produce a privilege log within the 30-day period prescribed by Rule 34 of the Federal Rules of Civil Procedure constitutes a waiver of privilege. *Id.* at 1147.

The law in this district does not mandate waiver of privilege based on the failure to produce a privilege log, and accordingly none of Defendants' cases cited for this unsupported proposition either involve or sustain such a result. *See also In re Subpoena Duces Tecum*, 439

F.3d 740, 751 (D.C. Cir. 2006) ("Rule 45(d)(2) is generally satisfied by the submission of a privilege log detailing each document withheld and the reason."). *See United States v. Am. Elec. Power Serv. Corp.,* 2001 U.S. Dist. LEXIS 18723, *27 (S.D. Ohio June 19, 2001)("[T]he obligation of the parties to seek extrajudicial resolution of discovery-related matters would be vitiated if the Court were to hold that, once a party produced a privilege log which deviated in any way from that party's obligations under the civil rules, the log could never be corrected and the potentially-privileged documents would simply be subject to discovery. The Court believes that the appropriate resolution of this issue is to await production of the revised privilege logs, and for the parties then to engage in meaningful discussions about the production of any documents which appear not to be privileged").

The Court should instead make a case by case determination of factors such as: the timeliness of the objection and accompanying information about the withheld documents; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard, including the relative sophistication of the party compiling the log. *Burlington,* 408 F.3d at 1149. *See In re Grand Jury Subpoenas (04-124-03 and 04-124-05),* 454 F.3d 511, 517 (6th Cir. July 13, 2006)("Actual determination of the merits of any claim of privilege must await adjudication *after* the parties have agreed to a subset of documents over which they disagree as to privilege.").

Here, Bulson provided a substantial and detailed privilege log within two months of serving his objections to Defendants' Subpoena on August 23, 2006. Williamson Decl. Ex. A. Considering these documents had to be sent to Los Angeles from Cleveland, and that the file was substantial, it is not unreasonable for Bulson's counsel to have needed a few weeks to produce a sufficiently accurate and detailed privilege log. Williamson Decl. ¶¶ 6-8.

Defendants' waiver claim is sharply at odds with their own behavior regarding the disclosure to Plaintiffs of their respective privilege logs: Defendant DC did not serve Plaintiffs with a privilege log until almost *eight months* after Defendants responses to Plaintiffs' discovery requests were due; and its parent, Defendant WB waited *thirteen months* to comply. Toberoff Decl. ¶¶ 4-8. Yet now it is Defendants who baldly claim that Bulson has entirely waived his attorney client privilege with respect to all privileged documents based on significantly lesser delay in presenting his privilege log.

Therefore, Bulson, having provided Defendants with a substantial privilege log within a reasonable time, should be held not to have waived any privilege regarding these documents.

## II. THE MOVANTS' SUBPOENA IS GROSSLY OVERBROAD AND, FOR THE MOST PART, UNRELATED TO THE SIEGEL LITIGATIONS

As set forth above, Bulson has provided a privilege log of his legal files and made himself readily available to be deposed. Notwithstanding this, Bulson has timely objected to the Movants' Subpoena as overbroad and burdensome as his files regarding Michael Siegel's rights are irrelevant to the Siegel Litigations. Mot. Compel Ex. 7.

A subpoena is clearly overbroad where "[t]he request is not limited to materials that may be relevant or lead to the production of admissible evidence nor is it restricted to the relevant time period." *Alexander v. FBI*, 186 F.R.D. 21, 35 (D.D.C. 1998).[1] Here, Defendants' document categories are overly broad, burdensome, and demonstrate that no effort was put forth to target relevant documents or time periods (i.e., "All Documents Concerning Superman and/or

---

[1] "[T]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *United States v. International Bus. Mach. Corp.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979). *See also In re Rational Software Sec. Litig.*, 28 F. Supp. 2d 562, 568 (N.D. Cal. 1998)(plaintiff's document requests held "grossly overbroad" where they contained broad time limits and sought "without limitation a wide range of documents").

Superboy" or "All Documents Concerning Michael Siegel's estate"). Mot. Compel Ex. 1. "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662-63 (D. Kan. 2003); *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see* Fed. R. Civ. P. 45(c)(2)(B)("an order to compel production shall protect any person who is not a party from significant expense. . . .").

While claiming that Bulson's documents must be produced notwithstanding any privilege and further demanding attorneys' fees, the Movants' Motion gives short shrift as to how their Subpoena is even remotely related to the instant litigations. Defendants vaguely assert that documents regarding a purported offer to purchase Michael Siegel's termination interest, or any other agreements regarding such interest, may be relevant to the purported value of Plaintiffs' interest "for which they are seeking an accounting in the actions." Mot. Compel 8. This vague assertion makes no common or legal sense nor is it a proper description of the Siegel Litigations. Pursuant to their Section 304(c) Terminations, the Siegels recaptured on April 16, 1999, Jerry Siegel's 50% joint copyright interest in *Superman*. Under copyright law, this entitles the Siegels to an accounting from the Movants, *Superman's* other joint owner, for 50% of the Movants' profits from their exploitation of *Superman* on and after April 16, 1999. *See generally*, *Nimmer on Copyright* § 6.12 (joint owner's duty to account); *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984); *Nimmer on Copyright* § 11.03, 11.04 (statutory termination of copyright transfers). Under the Copyright Act this requisite accounting is clearly not based on a market valuation of the *Superman* copyright as Movants' feign to justify their demands. To the extent that Michael Siegel made any agreements regarding his interests in *Superman* or *Superboy* this has no bearing

8

on the *Siegels*' right to an accounting from the Movants or the Movants' obligation under the Copyright Act to provide such an accounting as joint owners of *Superman*. *Id*. The foregoing is Defendants' entire explanation for why the documents sought by the Subpoena are "crucial" to Movants' defenses and counterclaims.

Defendants also argue that because Michael Siegel's "email will" may have been disclosed to third parties, any documents "concerning" that will also lose their privileged status. Again, Defendants' proposition is neither correct nor supported by Defendants' own authority. *See American Motors Corp. v. Huffstutler,* 61 Ohio St. 3d 343, 348 (1991)(upholding privilege); *Mid-American Nat'l Bank & Trust Co. v. Cincinnati Ins. Co.*, 74 Ohio App. 3d 481, 488-89 (Ohio Ct. App. 6th Dist 1991)(no privilege as to non-confidential letter sent to appellee because "no privilege ever existed to be waived"). In addition, Defendants' vague attack on Bulson's objections also fails. As noted above, Defendants' document requests are clearly not "directed to discrete topics." Furthermore, Defendants' challenge is flawed as they have not challenged the detailed privilege assertions embodied in Bulson's privilege log. *See Bank One, N.A. v. Echo Acceptance Corp.*, 2006 U.S. Dist. LEXIS 62575, *18-19 (S.D. Ohio Sept. 1, 2006)(movant's claim that blanket objections are improper disregarded where non-movant has since produced a privilege log).

In light of the grossly broad document categories propounded by Defendants seeking information wholly unrelated to the Siegel Litigations (i.e., every document concerning *Superman* and *Superboy*), Bulson should not be forced to produce these clearly privileged documents. As one district court has noted, "such a strict interpretation of the Rule would discourage informal dispute resolution among parties who cause issuance of subpoenas duces tecum and those to whom the subpoenas are issued," a result that "certainly would work against

9

the efficient administration of justice." *In re Goodyear Tire & Rubber Co. Sec. Litigation,* 1991 U.S. Dist. LEXIS 14486, at *2-*4 (N.D. Ohio 1991).

**III.  ATTORNEYS' FEES**

Defendants should not be rewarded for ignoring Bulson's compliance with their subpoena duces tecum and Bulson's counsel's efforts to amicably resolve the dispute over a non-party attorney's legal files. Williamson Decl. Ex. A; Toberoff Decl. ¶ 9, Ex. E. Nor should they be allowed to misrepresent the continuing dialogue between counsel in the Siegel Litigations by claiming that all requests related to Bulson were ignored. Williamson Decl. ¶ 5. Defendants' request for attorneys' fees should be denied in light of Bulson's clear compliance.

WHEREFORE, for the foregoing reasons, Bulson respectfully requests that this Court deny Defendants' Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees in its entirety.

Respectfully submitted,

By   /s/ Joshua Ryland
        Joshua Ryland
Renner Otto Boisselle & Sklar, LLP
1621 Euclid Avenue, Ninth Floor
Cleveland, Ohio 44115
Tel: (216) 621-1113
Fax: (216) 621-6165

Marc Toberoff
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
(310) 246-3333
(310) 246-3101

*Counsel for Don W. Bulson, Esq.*

## CERTIFICATE OF SERVICE

Respondent Don W. Bulson, Esq., hereby certifies that a copy of the forgoing Memorandum in Opposition to Defendants' Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees was served on November 6, 2006 via U.S. Mail and facsimile on the following counsel:

    Meggan A. Rawlin, Esq.
    Jones Day
    North Point
    901 Lakeside Avenue
    Cleveland, OH 44114
    Fax: 216-579-0212

    James D. Weinberger, Esq.
    Fross Zelnick Lehrman & Zissu, P.C.
    866 United Nations Plaza
    New York, NY 10017
    Fax: 212-813-5901

    Patrick T. Perkins
    Perkins Law Office, P.C.
    1711 Route 9D
    Cold Spring, NY 10516
    Fax: 845-265-2819

    Michael Bergman
    Weissman Wolff Bergman Coleman
      Grodin & Evall LLP
    9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, CA 90212
    Fax: 310-550-7191


     /s/ Marc Toberoff_____
    Marc Toberoff
    Attorney for Respondent