# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:<br><br>**JOANNE SIEGEL and LAURA SIEGEL LARSON,**<br><br>                      **Plaintiffs,**<br><br>        v.<br><br>**WARNER BROS. ENTERTAINMENT INC., et al.,**<br><br>                      **Defendants.** | Misc. Case No. 1:06MC0099<br><br>Case Nos.   SA CV 04-8400 SGL (RZx)<br>                  SA CV 04-8776 SGL (RZx)<br><br>(Consolidated for Discovery Purposes)<br><br>Action Pending in the U.S. District Court for the Central District of California |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants"), by and through counsel, Jones Day, hereby submit this reply brief in further support of their motion pursuant to Fed. R. Civ. P. 45. Movants respectfully request that, despite Bulson's belated production of a privilege log, their motion should nonetheless be granted because of inherent deficiencies in the log and Bulson's failure to carry his burden to establish a claimed "common interest" with Joanne Siegel and Laura Siegel Larson, the plaintiffs in the Underlying Actions, so as to justify the failure to produce certain limited documents consisting of his written communications with them, withheld on the ground of attorney-client privilege. At the very least, Movants seek the production of those documents, an order requiring Mr. Bulson to appear for deposition, and for their costs and fees in connection with this motion.

CLI-1469591v1

**INTRODUCTION**

Having done nothing in response to Movants' subpoena, and having repeatedly ignored Movants' requests for responsive documents and a privilege log, Bulson and his counsel leapt into action following Movants' service of this motion, by producing a privilege log on October 23, 2006 (one business day after the filing of this motion). The eleventh-hour production of this privilege log is not sufficient to sustain the claims of privilege made here. While Bulson's privilege log identifies correspondence between the deceased Michael Siegel and his attorney Don Bulson (which Movants acknowledge is likely privileged), it also lists correspondence between Mr. Bulson and the plaintiffs in the Underlying Actions and their attorneys. No basis, however, has been provided for withholding this information on privilege grounds.

Knowing this full well, counsel for Mr. Bulson in his opposition brief engages in a litany of attacks on purported problems with Movants' discovery in the Underlying Actions (Bulson Br. at 4). Of course, counsel fails to substantiate any of his accusations (indeed, Plaintiffs have not filed any discovery motion in the Underlying Actions) or, more importantly, explain why any of that is relevant to the instant motion, which deals with Mr. Bulson's failure to comply with a subpoena issued by this Court. The fact of the matter is that Mr. Bulson has made no effort at all to comply with the subpoena, let alone carry his burden to justify his claim that certain documents are subject to the "joint interest" exception to what would otherwise comprise a waiver of the attorney-client privilege. For these reasons, Movants respectfully request that the Court order Bulson to produce any and all such documents and appear for deposition.[1]

---

[1] In a last ditch attempt to avoid a court order, Mr. Bulson argues that he tried to compromise by offering on November 1, 2006 – over two and a half months after the subpoena was served and almost two weeks after this motion was filed "to represent that all responsive document had been listed in Bulson's privilege log and even to produce certain privileged documents." (Toberoff Decl. ¶ 9). This "offer" however, was only made in context of a request by Bulson's counsel to extend his time to respond to this motion to compel, and based on a fallacious privilege claim to shield from discovery Bulson's communication with third persons. (Weinberger Decl. Exs. 12-14). Moreover, the offer contained no

## I. BULSON'S PRIVILEGE LOG IS LATE AND INSUFFICIENT

Bulson's privilege log was not produced until after this motion was filed, two full months after he served objections to the August 11, 2006 subpoena and after Movants' counsel had repeatedly requested a log to no avail. Bulson's counsel claims that Movants' counsel was informed as to the status of the document production and/or log (Williamson Decl. ¶ 5), but this is incorrect. The only time Bulson's counsel ever contacted Movants' counsel concerning the subpoena prior to the motion being filed on October 20, 2006 was: (i) to object to the subpoena on August 23 and (ii) confirm by telephone on September 7 that no deposition was going forward on September 12. (Weinberger Decl. ¶ 5). At no time did Bulson's counsel make any representation that he had received files from Mr. Bulson or that a log was being prepared. (*Id.*) He simply confirmed that the deposition was not going forward on the day noticed, and said that he had to provide an update on when Movants could expect a log. (*Id.*) Until this motion was filed, he never did. (*Id.*)

It is well settled that "the burden of proving the existence of the attorney-client privilege is on the party claiming the privilege." *In re Rospatch Sec. Litig.*, 1:90-CV-805, 1:90-CV-806, 1:90-CV-807, 1:91-CV-085, 1991 WL 574963, *5 (W.D. Mich. Mar. 14, 1991) (citing *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir.), *cert. denied*, 449 U.S. 494 (1980)). *See also Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996); *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993); *Peyko v. Frederick*, 25 Ohio St.3d 164, 166 (1986) ("'[T]he burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] . . . .'" (citation omitted)). In meeting the burden of proving the existence of a privilege, the asserting party must

---

promise of when the documents might be produced or how extensive the production would be, nor did it address other components of this motion. That, coupled with the fact that discovery in the Underlying Actions closed on November 17, 2006 left Movants with no choice but to proceed with the motion.

identify each document withheld on a claim of privilege with "sufficient particularity," and include an index of the documents with a "particularized description of the contents of each document." *Rospatch*, 1991 WL 574963 at *5 (citing *Walsh*, 623 F.2d at 493; *In re Richardson-Merrell, Inc.*, 97 F.R.D. 481, 484 (S.D. Ohio 1983)).

Here, Bulson's late privilege log is on its face insufficient to sustain a claim of privilege, as it is woefully inadequate in terms of the level of information provided about the purportedly privileged documents. Bulson's log (Williamson Decl. Exh. A) classifies withheld documents by the following categories: "Log #," "Date of Document," "Identity of Recipient(s)," "Identity of Author(s)," "Document Description," "Privilege Claim," and "Present Location." (*Id.*) The "Document Description" category does not, however, describe the document at all, instead only identifying the document by type: "Letter," "Email," "Notes," or otherwise. Absent is any sort of indication to the Court or the opposing party as to what, exactly, the document relates to and why it is a privileged subject matter, as required by Rule 26(b)(5).

The reason for the rule's requirements is to avoid abuse of the privilege simply because a client and lawyer are corresponding with each other. Indeed, it is well accepted that simply because a document is the subject of communication between an attorney and his client, that document does not become subject to the privilege: the "mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638 (1994). Consequently, a party does not satisfy its burden of establishing the privilege when it makes blanket claims of privilege with respect to entire files simply because attorneys had something to do with them; claims of privilege must be supported on a document-by-document basis. *See, e.g., United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990). The party asserting the privilege has the burden of describing the nature of withheld

documents in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege. Fed R. Civ. P. 26(b)(5); *Antonious v. Spalding*, 1998 U.S. Dist. LEXIS 10725, at *3 (D. Md. April 21, 1998). Without that knowledge, Movants have no platform from which to challenge the assertion, which is the very reason that Rule 26(b)(5) requires the level of disclosure that it does. Accordingly, Bulson's log is insufficient.[2]

## II. BULSON HAS NOT MET HIS BURDEN OF ESTABLISHING A COMMON INTEREST FOR CERTAIN COMMUNICATIONS WITH PLAINTIFFS AND THEIR COUNSEL

Even had Bulson's log been timely and provided greater detail so as to permit Movants to analyze the log to determine whether a claim of privilege was proper, there are certain communications listed on the privilege log which, based on undisputed facts in the Underlying Actions, cannot be subject to Mr. Bulson's claim of "joint interest."

The so-called "joint defense," "common interest" or "community of interest" rule is "an exception to the general principle that communications in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." 1 Paul R. Rice, *Attorney-Client Privilege*, § 4:35 at 192-95 (2d ed. 1999) (hereinafter "Rice"). *See also Libbey Glass, Inc. v. Onedia, Ltd.*, 197 F.R.D. 342, 347-49 (N.D. Ohio 1999) (adopting "restrictive approach" to common interest exception, limiting opportunity to claim the common interest privilege to show concurrent *legal* interest, as opposed to commercial interests); *Cigna Ins. Co. v. Cooper Tires & Rubber, Inc.*, 3:99CV7397,

---

[2] Bulson's citation to the approval of the California Magistrate Judge for his log format fails for the simple reason that this proceeding is not taking place in California, but in Ohio. *See* Fed. R. Civ. P. 45(a)(2) (requiring subpoena *duces tecum* and for deposition to be issued from the court for the district where the production or inspection is to be made or deposition is to be taken, not from the court in which the underlying action is pending). *See also New York v. American Power & Elec. Power Serv. Corp.*, No. 2:04-CV-1098, 2:05-CV-360, 2006 WL 1526110, *1 (S.D. Ohio May 26, 2006) (holding that a "conclusory and often vague privilege log precludes this Court from assessing the applicability of the privilege in favor of Defendants" and, consequently, granting motion to compel).

2001 WL 640703, *2 (N.D. Ohio May 21, 2001) ("the 'common interest' extension of the privilege should be construed narrowly, rather than expansively."). If the parties to a communication share some common legal goal, then they may share otherwise privileged communications without concern that they will later have to disclose them as waived. *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, *6 (N.D. Ohio Feb. 9, 2006).

The common interest doctrine is a narrow exception to the rule that the privilege governing communications between clients and their counsel is waived when those communications are shared with third parties. The narrowness of the common interest exception is underscored by that fact that "this protection is not applicable to disputes between the participants in the joint defense who may subsequently find themselves in conflict over the very matter about which they were previously joining forces against a common adversary." Rice, § 4:35 at 198. *See also MPT*, 2006 WL 314435 at *7 ("[A]dversarial aspects of the relationship such as license negotiations are not protected."). Nor is it applicable where the parties only have a common "commercial interest." *Id*. at *6. *Libbey Glass*, 197 F.R.D. at 349. "The common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id*. at 348. *MPT* is directly on point here.

The Court will note that there are numerous entries on the privilege log (Williamson Decl. Ex. A) evidencing communications between Bulson, as Michael Siegel's attorney, on the one hand, and Plaintiffs Joanne Siegel and Laura Siegel Larson or their representatives, their former counsel Kevin Marks of Gang Tyre Ramer & Brown or present counsel Marc Toberoff, on the other. As set forth in their moving brief, defendants have asserted counterclaims in the Underlying Action to enforce a settlement agreement with Plaintiffs that the parties reached in October 2001. (Moving Br. at 4 & Ex. 4, ¶¶ 47-56). Plaintiffs repudiated that agreement by letter to DC and its counsel on September 21, 2002, in which they indicated that any deal with

defendants was off and that they were terminating all negotiations. (*Id*.). Indeed, no further negotiations took place after September 21, 2002 until the Underlying Actions were filed in October 2004. (*Id*.).

Mr. Bulson's client, Michael Siegel (now deceased), owned a vested 25% share of the copyright termination interest that was the subject of the October 2001 settlement and that is now the subject of the Underlying Actions. And while defendants did not negotiate the 2001 settlement with Mr. Siegel directly, he stood to benefit from it and Mr. Bulson was tangentially involved in the negotiations, thus creating an arguably legitimate basis for a claim of joint or common interest, protecting communications between Plaintiffs' counsel and Mr. Bulson on the subject of the settlement, to the extent they occurred, before October 2002 (although such a claim would only apply to communications in furtherance of a joint settlement). However, when on September 21, 2002 Plaintiffs repudiated their agreement and announced that settlement discussions had ceased, that potentially legitimate common interest ended.

Furthermore, Plaintiffs and Michael Siegel undisputedly assumed an adversarial position vis-à-vis their ownership shares after Plaintiffs repudiated the settlement, thus eviscerating any claim of joint privilege, around the time that the settlement was repudiated. Plaintiffs retained a California company, IP Worldwide ("IPW") (in which their current counsel Mr. Toberoff is a principal) to represent them in connection with efforts to exploit their Superman termination interest. (Weinberger Decl. Ex. 15). Then, in January 2003, Plaintiffs and IPW entered into a second agreement (*id*. Ex. 16) in which they acknowledged certain "risks and potential problems regarding Michael Siegel" and agreed that IPW partner Ariel Emanuel "will attempt to purchase all of Michael Siegel's rights, title and interest" in his termination rights in connection with IPW's representation of Plaintiffs. (*Id*.) Such a transaction had nothing to do with Michael Siegel's prior common interest with Plaintiffs in seeking a settlement with defendants.

These earlier agreements between Plaintiffs and IPW also cast substantial doubt on Bulson's claim that post-January 2003 correspondence between Toberoff and Bulson, or their clients, Plaintiffs and Michael Siegel, fall under any purported common interest.[3]  There are at least 15 separate communications disclosed on Bulson's log that clearly fit in this timeframe:

| Log # | Date | Author | Recipient | Description | Privilege Claimed |
|---|---|---|---|---|---|
| 299 | 4/16/03 | Laura & Joanne Siegel (Plaintiffs) | Don Bulson | Letter | Attorney/Client ("AC") – Joint Interest ("JI") |
| 301 | 4/30/03 | Marc Toberoff | Bulson | Letter | AC/JI |
| 319 | 6/18/03 | Bulson | Toberoff | Letter | AC/JI |
| 325 | 7/16/03 | Toberoff | Bulson | Letter | AC/JI |
| 327 | 8/6/03 | Toberoff | Bulson | Letter | AC/JI |
| 328 | 8/6/03 | Toberoff | Bulson | Letter | AC/JI |
| 377 | 11/12/04 | Bulson | Toberoff | Email | AC/JI |
| 378 | 11/12/04 | Bulson | Toberoff | Email | AC/JI |
| 379 | 11/17/04 | Toberoff | Bulson | Email | AC/JI |
| 380 | 11/17/04 | Toberoff | Bulson | Email | AC/JI |
| 381 | 11/18/04 | Toberoff | Bulson | Email | AC/JI |
| 386 | 11/24/04 | Bulson | Toberoff | Email | AC/JI |
| 388 | 11/29/04 | Toberoff | Bulson | Email | AC/JI |
| 393 | 1/17/05 | Toberoff | Bulson | Email | AC/JI |
| 412 | 11/18/05 | Bulson | Toberoff | Email | AC/JI |

Bulson, of course, makes no effort either through his belated privilege log or opposition to this motion to support his claim of joint interest with Plaintiffs.  That is because no such joint interest exists, and any privilege was waived when Messrs. Toberoff and Bulson or their clients

---

[3] Any remaining doubt must be resolved against a finding of joint interest, since Michael Siegel's "last act" before his passing was to affirmatively exclude Plaintiffs from any future ownership stake in his share of the Superman termination interest.  (Moving Br. Ex. 5).

exchanged correspondence thereby breaking the confidentiality required to maintain the privilege.[4]

As noted in their moving brief, the 15 documents sought here – none of which have been produced by Plaintiffs in the Underlying Actions – are important to Movants' discovery efforts in the underlying litigation for two chief reasons. First, from a review of the January 21, 2003 agreement between Plaintiffs and IPW in which IPW was to attempt to purchase Michael Siegel's termination interest, Plaintiffs and IPW were concerned about "various risks and potential problems" regarding Michael Siegel (*i.e.*, that Michael Siegel might have had a different view as to the nature and scope of the termination rights). Second, any offer made by Toberoff or Emanuel on behalf of IPW to purchase Michael Siegel's interest has a bearing on the valuation issues at stake in the Underlying Actions. Given the limited nature of the documents (15 letters or emails) sought from Mr. Bulson, and the broad scope of discovery afforded by Rule 26, Bulson should be ordered to produce these documents.

---

[4] Incredibly, Bulson argues in his opposition to this motion that Movants' motion relating to Bulson's privilege claims "is flawed as they have not challenged the detailed privilege assertions embodied in Bulson's privilege log." (Bulson Br. at 9). However, since Bulson *withheld* his privilege log until *after* Movants filed their motion, there was no opportunity to challenge its contents.

## CONCLUSION

Accordingly, and for the reasons set forth in their moving brief, Movants respectfully request that their motion to compel be granted.

Respectfully submitted,

By     s/Meggan A. Rawlin
David A. Kutik  (0006418)
Meggan A. Rawlin  (0074215)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dakutik@jonesday.com
mrawlin@jonesday.com

Counsel for Movants

Of counsel:

Roger L. Zissu
James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, PC
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901

## CERTIFICATE OF SERVICE

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics hereby certify that a copy of the foregoing Reply Memorandum in Further Support of Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees was served on November 20, 2006 via U.S. Mail, facsimile, and the Court's electronic case filing system on the following counsel:

> Marc Toberoff, Esq.
> Law Offices of Marc Toberoff, PLC
> 2049 Century Park East, Suite 2720
> Los Angeles, CA 90067
> Telephone: (310) 246-3333
> Facsimile: (310) 246-3101
>
> Joshua Ryland, Esq.
> Renner Otto Boisselle & Sklar, LLP
> 1621 Euclid Avenue, Ninth Floor
> Cleveland, Ohio 44115
> Telephone: (216) 621-1113
> Facsimile: (216) 621-6165

> s/ Meggan A. Rawlin
> Meggan A. Rawlin
> Attorney for Movants