# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:** <br><br> **JOANNE SIEGEL and LAURA SIEGEL LARSON,** <br><br> Plaintiffs, <br><br> v. <br><br> **WARNER BROS. ENTERTAINMENT INC., et al.,** <br><br> Defendants. | Misc. Case No. 00099- SO <br><br> Case Nos. CV 04-8400 SGL (RZx) <br> CV 04-8776 SGL (RZx) <br><br> (Consolidated for Discovery Purposes) <br><br> Action Pending in the U.S. District Court for the Central District of California |

### DON W. BULSON, ESQ.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND APPEAR FOR DEPOSITION

**I.**

**INTRODUCTION**

Ohio resident Don W. Bulson, Esq. ("Bulson" or "Respondent"), who is a non-party to this action pending in the Central District of California, hereby submits his opposition to the Renewed Motion to Compel ("Renewed Motion"), which Defendants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc. and DC Comics (collectively, "Defendants" or "Movants") filed on April 9, 2008. Defendants' "renewed" motion ignores prior decisions in this case, and would have the ultimate effect of forcing this Court, without reason, to review *hundreds of clearly privileged documents* between Michael Siegel and his attorney, Mr. Bulson. Despite the overbroad and

invasive nature of the Movants' Subpoena Duces Tecum served on August 11, 2006 (the "Subpoena"), Mr. Bulson reviewed his legal files and served a detailed and procedurally sufficient privilege log. As such, and for the further reasons set forth below, the demands in Defendants' Renewed Motion are without merit and should be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or the "Siegel Heirs") are the widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world renowned comic book hero, "Superman," and the sole author of "Superboy." Plaintiffs have initiated two civil actions in the United States District Court for the Central District of California regarding Plaintiffs' proper exercise of their right under section 304(c) of the 1976 United States Copyright Act, 17 U.S.C. § 304(c) ("Section 304(c)"), to recapture Siegel's original copyrights in "Superman" and "Superboy" by serving statutory notices on Defendants on April 3, 1997 and March 8, 2002, respectively, terminating Siegel's prior grant(s) of "Superman" and "Superboy" to Defendants' predecessor(s) (the "Siegel Terminations" or "Terminations"). *See* Movants' Motion to Compel Production of Documents, filed October 20, 2006, Exs. 2, 3.

Plaintiffs' Terminations complied with all the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, the regulations promulgated thereunder by the Register of Copyrights. Accordingly, on April 16, 1999, the noticed "Superman" termination date, all rights Siegel conveyed in "Superman" to Defendants' predecessors reverted to Plaintiffs. Mot. Compel Ex. 2. On November 17, 2004, the noticed "Superboy" Termination date, all rights that Siegel had conveyed in "Superboy" to Defendants' predecessors reverted to Plaintiffs. Mot. Compel Ex. 3. On March 26, 2008, Judge Stephen G. Larson of the United States District Court for the Central

District of California upheld the validity of Plaintiffs' Superman Terminations, ruling "[a]fter seventy years, Jerome Siegel's heirs regain what he granted so long ago – the copyright in the Superman material that was published in Action Comics, Vol. 1." This Court acknowledged this ruling in its April 1, 2008 order – "[t]he court takes judicial notice of the fact that the judge has decided the merits of the claims by the parties in the above-entitled law suits." Declaration of Marc Toberoff in Opposition to Defendants' Renewed Motion to Compel ("Toberoff Decl.") Ex. A.

Defendants subpoenaed third party attorney Don Bulson on August 11, 2006. Mr. Bulson represented Michael Siegel, the now deceased son of Jerome Siegel. Mr. Bulson objected to the subpoena, including on the basis of privilege, and provided to Defendants a substantial privilege log comprised of 422 separate entries. Toberoff Decl., Ex. B. In October 2006, Defendants objected to Mr. Bulson's assertions of privilege and the format of his privilege log, claimed any privilege had been waived, moved to compel production of all communications listed in the log and for attorneys' fees. After arguing that no privilege applied to any documents, Defendants focused their arguments on fifteen (15) specific pieces of correspondence between Plaintiffs and/or their counsel, on the one hand, and Mr. Bulson, on the other. *See* Reply Memorandum in Further Support of Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum, filed November 20, 2006, at pgs. 8-9.

This Court heard oral argument on Defendants' motion on February 1, 2008, and issued a ruling on February 5, 2008. Toberoff Decl., Ex. C. The Court denied Defendants' motion to compel and upheld the privilege for the vast majority (96%) of the Bulson documents, rejected Defendants' waiver arguments noting "the submission of the privilege log was not so delayed as

3

to effect a waiver," and rejected Defendants' claim for attorney's fees, noting that Defendants' subpoena was "extremely broad and covered a large number of documents." *Id.,* at 2.

Of the 422 entries in Mr. Bulson's privilege log, this Court held that Defendants might be entitled to 15 documents, based on the specific arguments made in their reply brief, and required Mr. Bulson to serve a revised privilege log describing in greater detail the privileged nature of the 15 communications. *Id.* On February 11, 2008, Defendants were served a revised log, and, at Defendants' continued request, the Court thereafter reviewed the documents *in camera*. Toberoff Decl., Ex. D.

With respect to this review, Plaintiffs cited relevant Supreme Court and Sixth Circuit authority for why the 15 documents are privileged under the "common interest" privilege exception. Toberoff Decl., Ex. E. Plaintiffs argued that in the 15 communications, Michael Siegel's and Plaintiffs' respective attorneys clearly discussed and evaluated Defendants' settlement proposals and the economic risks of litigation arising out of Plaintiffs' Notices of Termination, of which both were beneficiaries. *Id.* Plaintiffs further argued that to the extent any communications regarding a potential purchase of Michael Siegel's interests were technically "adversarial," this did not alter the privileged status of the communications *vis á vis* the Defendants or the fact that the negotiations contained privileged subject matter. Plaintiffs contended that such confidential communications, in which both sides had a common legal interest against Defendants, are protected by the "common interest" privilege. *Id.*

On April 1, 2008, this Court nonetheless ruled that none of the 15 communications "are subject to the attorney/client privilege based on the joint interest exception," because the documents involved negotiations for the purchase of Michael Siegel's beneficial interest in Plaintiffs' Terminations. The Court did not view these specific communications as part of a

4

larger protected dialogue between Plaintiffs and Michael Siegel regarding the Terminations. Toberoff Decl., Ex. A. Pursuant to the Court's April 1, 2008 order, the 15 communications were immediately turned over to Defendants on April 2, 2008.

## III.

## ARGUMENT

### A. DEFENDANTS' CLAIM THAT THIS COURT'S RULING CALLS INTO QUESTION THE REMAINING CLAIMS OF PRIVILEGE IS WITHOUT MERIT

Defendants have offered no support whatsoever for their novel position that because the Court held that the common interest privilege did not apply to 15 entries on the privilege log, the 407 *other* documents listed on Mr. Bulson's privilege log and upheld by the Court are now somehow subject to repeated challenge. Defendants' demand is spurious. Defendants' original motion to compel aggressively challenged Mr. Bulson's assertion of privilege with respect to all communications in his privilege log, including the majority that consisted of communications between Michael Siegel and Mr. Bulson, his attorney. In their reply, Defendants, fearing denial of their overreaching motion in its entirety, focused on 15 specific documents and argued that the joint-interest privilege did not apply *to those specific documents.* This Court ordered the production of these remaining 15 communications on the log after an *in camera* review, but *sustained* the assertion of privilege with respect to the remaining 407 documents listed in Bulson's privilege log. Toberoff Decl., Ex. A at 2. ("The Court in an Order dated February 5, 2008, denied the Motion to Compel, except in regard to 15 unspecified documents identified in Movant's Reply Memorandum").

Mr. Bulson's 31-page privilege log properly sets forth, with respect to each communication therein, the date, sender, recipient, the nature of the privilege claimed, the document type and the present location of the document. Toberoff Decl., Ex. B. This log was

constructed using a format previously approved *in these actions* by Magistrate Ralph Zarefsky of the District Court for Central District of California:

> "The only remaining issue is whether the descriptions in the log are sufficient. The Court notes that the log appears to follow the form suggested in a commonly-used treatise, W. Schwarzer, W. Tashima and J. Wagstaffe, *Federal Civil Procedure Before Trial*, Form 11:A (Rutter 2006). Moreover, the log appears to have the same information which the Court found sufficient in *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989); *see in re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Accordingly, this Court too finds that by providing this log, the *Plaintiffs have sufficiently asserted the attorney-client privilege and the work product doctrine*."

*Id.*, Ex. F (5:16-27)(emphasis added).

Mr. Bulson's privilege log follows this precise format and, therefore, the attorney-client privilege and the work product doctrine have been sufficiently asserted as to these documents and communications. Toberoff Decl., Ex. B. Knowing this, Defendants strategically chose in their Reply to focus on the sufficiency of the joint interest privilege as asserted with respect to 15 of the log entries. This Court upheld the validity of the privilege log as to the remainder of these entries in accord with Magistrate Zarefsky in the Central District of California. Toberoff Decl., Ex. C at 2. Having failed to successfully argue this previously, Defendants use the mere pretext of the Court's ruling on the 15 communications to move for reconsideration, without foundation, as to the remainder of the log. Defendants disingenuously contend that Mr. Bulson and Plaintiffs "deceived" them in their first log because the privilege claims for the 15 documents were "obviously" not warranted. Motion at 3. Defendants insist that Mr. Bulson and the Siegels furthered their "deception" in the revised privilege log by stating that the communications regarded "offer and counteroffers to sell Michael Siegel's termination interest in light of Warner Bros.' settlement offers and the risks of litigation re: Joanne & Laura Siegel's 17 U.S.C. § 304(c) termination regarding Jerome Siegel's 'Superman' copyright." Toberoff Decl., Ex. D. Defendants' self-effacing statements as to their purported deception and "naïve[te]" do not comport with the fact that from the get-go Defendants aggressively challenged Mr. Bulson's

*entire* log, even though, as this Court duly noted, it should have come as no surprise that a large portion of the correspondence in Mr. Bulson's legal files constituted privileged communications with his client: "[t]he court also finds that the award of attorney fees to Movants is not appropriate because their document request to Mr. Bulson, attorney for deceased Michael Siegel, was extremely broad and covered large numbers of documents, and because it could be anticipated that some of these documents would be covered by the attorney client privilege." Toberoff Decl., Ex. C at 2. Defendants' claim that they were further led astray by Plaintiffs' supplemental privilege log is also not credible in that they immediately challenged this revised log without so much as an explanation. Toberoff Decl., Ex. G.[1]

As explained in Respondent's correspondence with the Court, Plaintiffs maintained that the 15 communications reflected Plaintiffs' counsel's evaluation of prior settlement offers and the economic risks of anticipated litigation regarding the Siegel's notices of termination rights, of which both Michael Siegel and the Plaintiffs were beneficiaries and aligned *against the Defendants*. Toberoff Decl., Ex. E. Such a position is certainly colorable and presents close questions of law and fact, even if it was ultimately rejected by this Court. *See Eisenberg v. Gagnon*, 766 F.2d 770, 787-788 (3d. Cir. 1985) (recognizing that "communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interests."); *U.S. v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990)(collecting cases)("[T]he rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other…"); *U.S. v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)(common interest exception applies to attorney work product doctrine);

---

[1] The Court ordered that Plaintiffs furnish the 15 communications to the Court for *in camera* review if the revised log was challenged by Defendants in apparent recognition that this was likely, if not inevitable. Toberoff Decl., Ex. C at 2-3 ("It was also likely that the court might have to determine whether the privilege was applicable").

7

*Hunydee v. U.S.*, 355 F.2d 183, 185 (9th Cir. 1965) (applying the common interest doctrine to statements concerning a matter of common concern, even though co-defendants generally had a significant conflict of interest).

Plaintiffs' contentions were further bolstered by the fact that courts have upheld the common interest privilege *even where the interests of the joint holders of the privilege were adverse in part*. *See Hunydee v. U.S.*, 355 F.2d 183, 185 (9th Cir. 1965); *Griffith v. Davis*, 161 F.R.D. 687, 692 n.6 (C.D.Cal. 1995)(the interest applies even if the parties' interests "may even be adverse in some respects"); *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F.Supp. 329, 331 (C.D.Cal. 1992)("cooperating plaintiffs must be extended that same privilege" as joint defendants); Toberoff Decl., Ex. E.

Defendants disingenuously focus on the content of the June 18, 2003 short letter from Mr. Bulson to Mr. Toberoff to misleadingly press for a re-evaluation of Mr. Bulson's entire log. *See* Renewed Motion at 3. However, this letter cannot be viewed in a vacuum, as it was in reply to and part of a larger discussion wherein the Siegel family specifically discussed a potential buy-out of Michael Siegel in light of their economic evaluation of Defendants' prior settlement offers and the risks of litigation with Defendants. *See* Documents Submitted For *In Camera* Review (DB007-DB044). For example, the August 6, 2003 letter from Mr. Toberoff to Mr. Bulson, submitted for review *in camera* (DB024-DB025), *specifically evaluates* the pros and cons of Michael Siegel selling his beneficial interest in the Superman Terminations to a third party in light of Defendants' stringent prior settlement offers and the risks of drawn-out litigation. Thus the description in Plaintiffs' privilege log that this was a "[l]etter discussing Warner Bros.' settlement offers and the risks of litigation re: Joanne & Laura Siegel's 17 U.S.C. § 304(c) termination regarding Jerome Siegel's 'Superman' copyrights" is not inaccurate.

8

Toberoff Decl., Ex. D.  Plaintiffs did not *specify the precise content* of the documents that were subject to a claim of privilege for obvious reasons – to do so would eviscerate the privilege. Plaintiffs' colorable claim of the joint interest privilege, even if ultimately rejected, is hardly sufficient to "call[] into question *all* claims of privilege in this matter."  Renewed Motion at 3.

Relentlessly spinning this dispute, Defendants now seek to dredge up *407* documents for which privilege was previously asserted in an approved form and upheld.  Yet Defendants have advanced no argument, nor cited a single authority in support of their "renewed motion." Defendants' speculation and hyperbole regarding their purported "deception" is a poor substitute for legal precedent.  An *overwhelming majority* of the remaining documents that Defendants are seeking to have the Court re-examine consist of correspondence between third-party Michael Siegel and his attorney, Don Bulson – *classic privileged attorney-client communications.* Toberoff Decl., Ex. B.  Defendants' failure to advance any remotely substantive arguments and their lack of focus underscores their unwarranted objective of having the Court perform an overbroad and indiscriminate *in camera* review of all of the remaining 407 documents listed in Mr. Bulson's privilege log.

Defendants' overzealous attempt to pivot away from the 15 disputed documents contested in good faith by the parties to hundreds of *clearly privileged attorney-client communications*, properly listed in Mr. Bulson's log, is meritless, if not outrageous, and should not be countenanced by the Court.  Defendants were given a full and fair opportunity to contest Mr. Bulson's privilege log in their original motion and reply, which was denied, other than with respect to 15 communications for which the joint-interest privilege was asserted.  Defendants should not now once again ask Plaintiffs and the Court to randomly sift through 407 documents in a vain attempt to support Defendants' baseless and unspecified claims.

# IV.

## CONCLUSION

For the reasons set forth above, Respondent respectfully requests that the Defendants' "renewed" motion to compel production of documents be denied in its entirety.

Respectfully submitted,


By __/s/ Marc Toberoff_____

Marc Toberoff
Nicholas C. Williamson
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
(310) 246-3333
(310) 246-3101

Joshua Ryland
Renner Otto Boisselle & Sklar, LLP
1621 Euclid Avenue, Ninth Floor
Cleveland, Ohio 44115
Tel: (216) 621-1113
Fax: (216) 621-6165

*Counsel for Don W. Bulson, Esq.*

# **CERTIFICATE OF SERVICE**

Respondent Don W. Bulson, Esq., hereby certifies that a copy of the forgoing Memorandum in Opposition to Defendants' Renewed Motion to Compel Production of Documents and Appear for Deposition was filed and served upon all parties and counsel of record on April 23, 2008.

By  /s/ Marc Toberoff_____
    Marc Toberoff
    Attorney for Respondent
