UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: SUBPOENA DUCES TECUM ) | Case No.: 1:06 MC 99 | |
| ISSUED BY THE U.S. DISTRICT ) | | |
| COURT FOR THE NORTHERN ) | | |
| DISTRICT OF Ohio in: ) | Case Nos. | SA CV 04-8400 SJO (RZx) |
| ) | | SA CV 04-8776 SJO (RZx) |
| JOANNE SIEGEL, *et al.*, ) | | |
| ) | JUDGE SOLOMON OLIVER, JR. | |
| Plaintiffs ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| WARNER BROS. ENTERTAINMENT ) | | |
| INC., ) | | |
| ) | | |
| Defendant ) | ORDER | |

Currently pending before the court is the Renewed Motion to Compel Production of

Documents and Appear for Deposition (ECF No. 16). For the reasons stated below, the Motion is

denied.

I.  BACKGROUND

Previously, Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications,

Inc., Warner Bros. Television Production Inc., and Defendant-Counterclaimant DC Comics

(collectively, "Movants"), filed a Motion to Compel Ohio resident Don Bulson, Esq. ("Bulson"),

who was counsel for Michael Siegel, the deceased son of Jerry Siegel, to produce documents

responsive to a subpoena issued by this court in the above-captioned actions and for other pertinent

relief. Jerry Siegel, along with Joseph Schuster, created the first Superman comic story published

in 1938.  Plaintiffs in the two actions in California, Joanne Siegel and her daughter, Laura Siegel

Larson, are  the widow and daughter of Jerry Siegel,respectively.

One California action arises out of a purported termination of the  rights of the Warner Bros.

Defendants relating to literary works featuring the Superman character.  Jerry Siegel's share relative

to the grants by Jerry Siegel and Schuster is proportionally owned as follows:  50% by Joanne

Siegel; 25% by Laura Siegel Larson; and 25% by Michael Siegel, Jerry Siegel's son from his first

marriage.

The second California action involves a notice of termination relating only to comics

featuring Super Boy, in which only Jerry Siegel held the copyright.  His wife, daughter and son hold

proportionate interests in the same percentages that they hold in respect to his rights to Superman.

The merits of the underlying cases have been determined, but damages issues are still to be decided.

Warner Brothers issued a subpoena on Don W. Bulson, counsel for Michael Siegel, on

August 10, 2006, for a deposition scheduled for September 12, 2006, at 12:00 p.m.  Documents

sought pursuant to the subpoena were to be produced on August 28, 2006, at 12:00 p.m.  The

subpoena was wide-ranging.  It sought:

1.      All documents concerning Superman and/or Superboy.

2.      All documents concerning any negotiations concerning Superman and/or Superboy, including, but not limited to, negotiations by or with Defendants, Plaintiffs, Michael Siegel, Dennis Larson, Toberoff and/or the Shuster Representatives.

3.      All documents concerning any agreements with Plaintiffs, Michael Siegel, Dennis Larson, Toberoff, and/or the Shuster Representatives concerning Superman and/or Superboy, including, but not limited to, any agreements concerning any ownership interest in and/or revenue from Superman and/or Superboy.

4.      All documents concerning any valuation of any current or potential ownership interest in Superman and/or Superboy.

5.    All documents evidencing any correspondence with any third person concerning Superman and/or Superboy, including, but not limited to, Plaintiffs, Dennis Larson, Toberoff, and/or the Shuster Representatives.

6.    All documents concerning Michael Siegel's estate, including, but not limited to, any wills, draft wills, and any communications expressing Michael Siegel's wishes with respect to any assets.

7.    All documents concerning any litigation relating to Michael Siegel's estate.

Mr. Bulson filed objections based on vagueness, ambiguity, overbreadth, undue burden and attorney/client privilege. No documents were provided.

After the filing of the privilege log, Defendants produced a log containing 422 items. A large number of the documents were communications between Mr. Bulson and his client, Michael Siegel, though there were a significant number of other documents. In their Motion to Compel Production of Documents, Movants maintained that the documents sought are crucial to their defenses and counterclaims. Movants asserted that the information showing that Plaintiffs Joanne Siegel and Laura Siegel Larson authorized their agent to purchase Michael Siegel's termination interest on their behalf, which might have been in the possession of Siegel's attorney, were relevant to the purported value of Plaintiff's interest, for which they are seeking an accounting in the action. They also argued that "because one of the primary issues in the underlying Capital Actions is an attempt to place a value upon Plaintiff's purposed re-captured share in the Superman copyrights, any agreements Michael Siegel may have made or negotiated regarding his purported copyright interests are directly relevant."

After the filing of the privilege log, Movants focused on certain correspondence, including correspondence between Mr. Bulson and the Plaintiff in the underlying action and their attorneys. The Movants maintained that the joint interests doctrine asserted in regard to those documents by

Mr. Bulson was not well-taken, and attorney-client privilege was therefore inapplicable. They

asserted this was clearly the case in regard to documents authored after September 21, 2002, the date

on which Plaintiff's repudiated their agreement and announced that settlement discussions with

Movants had ended. Consequently, any potentially legitimate joint interests based on their seeking

to reach a joint resolution with Movants had ended. Movants zeroed in on fifteen communications

from the log to which Bulson had asserted attorney/client privilege based on a joint interest with

dates ranging from April 16, 2003, to November 18, 2005.

Movants asserted that:

> "First, from a review of the January 21, 2003 agreement between
> Plaintiffs and IPW in which IPW was to attempt to purchase Michael
> Siegel's termination interest, Plaintiffs and IPW were concerned
> about 'various risks and potential problems' regarding Michael Siegel
> (i.e., that Michael Siegel might have had a different view as to the
> nature and scope of the termination rights). Second, any offer made
> by Toberoff or Emanuel on behalf of IPW to purchase Michael
> Siegel's interest has a bearing on the valuation issues at stake in the
> Underlying Actions. Given the limited nature of the documents (15
> letter or emails) sought from Mr. Bulson, and the broad scope of
> discovery afforded by Rule 26, Bulson should be ordered to produce
> these documents."

Thereafter, this court ordered Mr. Bulson to provide a more detailed privilege log regarding

the fifteen communications identified by Movants so that Movants would be in a better position to

evaluate the assertion of the attorney/client privilege claims based on joint interests. After a more

detailed log was provided, Movants reiterated their assertion that these documents were not covered

by the attorney/client privilege. This court then reviewed those documents in-camera and

determined they were not covered by the attorney/client privilege based on joint interests.

## II.  CURRENT MOTION

In their Renewed Motion to Compel Production of Documents and Appear for Deposition,

Movants state:

> In their November 20, 2006 Reply Brief, Movants, in a good faith attempt to compromise, noted that the[sic] despite the fact that the privilege log was produced late, well after the objections were served and after Movants' motion was filed, the majority of documents listed appeared at face value to be arguably subject to the attorney-client privilege. Movants thus focused on 15 specific communications allegedly subject to a joint privilege, and requested that the Court order Plaintiffs to provide more information with respect to these communications so that Movants could better evaluate the claimed privilege. The Court agreed at the February 1, 2008 hearing and confirmed such agreement by its February 6, 2008 Amended Order.

In their Renewed Motion, Movants seek reconsideration of the court's Amended Order by requiring Bulson to submit a supplemental privilege log with respect to the remainder of the 422 documents identified in Bulson's initial privilege log so that they might evaluate the alleged claim of privilege as to each document. They further request that if they have additional concerns with regard to documents identified on a new supplemental log, that the court order an in-camera review of such documents to determine whether they are in fact privileged. They assert, among other things, that because counsel for Bulson's arguments were not well-taken in regard to the fifteen documents discussed above, this, as well as the testimony of Bulson, cast doubt on the validity of the assertion of privilege regarding the other documents.

While it is true that counsel for Bulson did not accurately characterize some of the documents and was incorrect regarding his claims of privilege, the court does not find that the circumstances herein are such as to cast the entire process into question. As Movants acknowledge, the substantive phase of the litigation is over, and they are seeking discovery in regard to valuation issues only. In this context, the compromise arrived at earlier was, and remains, a reasonable one because it was geared to obtain recent, non-privileged correspondence which might bear on these

issues. The date chosen as a starting point, the date after settlement negotiations broke down between Movants and Plaintiff, was also reasonable. This was especially so when so many of the communications requested were between Mr. Buford and his client, Michael Siegel.

Given the broad nature of the requests in this case, the court is not convinced that it should reconsider its prior decision and allow Movants to proceed with further discovery regarding all of the documents described in the log, in a context where Movants have not pointed to any documents from that list that may bear on valuation issues and which were exchanged by parties that were not in a confidential attorney/client relationship. This is especially true where the production of documents will now be irrelevant for any other purpose.

For all of these reasons, Movants' Renewed Motion to Compel Production of Documents and Appear for Deposition (ECF No. 16) is denied.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

August 13, 2008